## Case No. 17,938.

### WOOD et al. v. ABBOTT et al.

[5 Blatchf. 325.] [1]

Circuit Court, S. D. New York. July, 1866.

COPYRIGHT—PHOTOGRAPHIC PRINTING.

A picture on paper, made by the art of photography from a glass "negative," is not a print, cut or engraving, within the 1st section of the copyright act of February 3, 1831 (4 Stat. 436).

[Cited in Yuengling v. Schile, 12 Fed. 107.]

This was an action [by Hamilton Wood and others against Milton S. Abbott and others] in the nature of a qui tam suit, founded on the 1st, 4th, 5th, and 7th sections of the act of February 3, 1831 (4 Stat. 436), relating to copyrights. At the trial, a verdict was taken for the plaintiffs, for the sum fixed by the 7th section of the act, subject to the opinion of the court, and the plaintiffs now moved for judgment on the verdict.

George W. Wingate, for plaintiffs.

Thomas C. Fields, for defendants.

SHIPMAN, District Judge. The plaintiffs charge the defendants with pirating certain alleged "prints or engravings," the copyrights of which the plaintiffs allege belong to them. The case presented by the proofs is a novel one, at least in this court, and requires a statement of the facts in order to see the precise point which the judgment .of the court determines. The plaintiffs are photographers in the city of New York, and are engaged in business as partners, under the name of the New York Photographing Company. One Fish, an artist, drew in crayon two original drawings or designs of the human figure, one called "The Golden Age,"

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

and the other "School Days." These pictures he sold to the plaintiffs, and assigned to them, so far as he could legally do so, all the rights which he had to, or growing out of, the same. The object of this sale and assignment by Fish and purchase by the plaintiffs was to enable the latter to manufacture and copyright photographs of the original drawings. To carry out this object, the plaintiffs caused what are known in photography as "negatives" to be taken. From these negatives they produced great numbers of copies of the original .designs, but of a very much smaller size. Before the publication and sale of these copies, the plaintiffs deposited in the clerk's office of the United States district court for the Southern district of New York, printed titles of the designs, together with photographic copies thereof. They also, before the publication and sale of such copies, impressed on the latter the words, "Entered according to act of congress, &c." There is some dispute, in the evidence, as to whether or not these words were impressed on all of the pictures before they left the hands of the plaintiffs, but, for the purposes of this motion, I shall assume that they were placed on them all. These photographic copies were quite small, and were mounted on cards of nearly the same size, about two and a half inches by four. The pictures themselves were on a piece of thin paper, and these were pasted on the cards. The words "Entered according to act of congress, &c.," were not on the thin paper upon which the pictures were taken, but were impressed on the cards upon which they were pasted, just at the foot of the pictures. The defendants insist that, inasmuch as the statute requires these words to be "impressed on the face thereof," in order to entitle the party to the benefit of the act, the impression of the words on the card at the foot of the picture was not a compliance with this requirement, and that, therefore, the alleged copyright furnishes no protection to the publishers. It is not necessary to determine this point in the present case, for there is another one more prominent and strongly marked, which, in the judgment of the court, is decisive of the controversy between these parties.

The defendants, having purchased a copy of each of these small photographic pictures, made negatives from them, and, from such negatives, printed and sold in the market copies almost identical with those made and sold by the plaintiffs. The plaintiffs insist that, upon these facts, they have shown valid copyrights for these small photographs, made from the original designs in their possession, and that the defendants have infringed their rights in the premises, and the question is, whether the verdict taken at the trial can be supported by the 1st section of the act of 1831, upon which the alleged copyrights are founded. That section provides, that "any person or persons,

being a citizen or citizens of the United States, or resident therein, who shall * * * invent, design, etch, engrave, work, or cause to be engraved, etched, or worked, from his own design, any print or engraving, and the executors, administrators, or legal assigns of such person or persons, shall have the sole right of printing, reprinting, publishing and vending such * * * print, cut, or engraving, in whole or in part, for the term of twenty-eight years from the time of recording the title thereof, in the manner hereinafter directed." A glance at this section will show that the question in controversy is, whether or not these photographs are prints, cuts or engravings, and, therefore, protected by the statute.

The principal ground upon which the plaintiffs claim the validity of the copyright is, that, as they allege, the photographs are "prints." The process by which these photographs are taken is substantially as follows: The original picture is transferred to a prepared glass plate, according to the well-known practice of photographers. This copy of the original is called a negative, and, as seen in the medium of transmitted light, the lights and shadows of the original are reversed. A sheet of prepared paper is then laid upon the plate, both paper and plate are put into a frame of the proper size, in which pressure is applied to the paper by appropriate means, so as to bring the paper into contact with the plate throughout its entire surface, and then the plate is exposed to the light of the sun. The rays of light transmitted through the glass, throw the picture on the prepared paper, and fix it there in positive light and shadow. By this means, reduced copies of the original are extensively multiplied. The pressing of the paper upon the glass plate, is to make the contact of their surfaces perfect throughout, in order to prevent the diffusion of the light, and the consequent blurring of parts of the picture, which would occur in spots where this contact did not take place. In other words, the pressure is to hold the paper to the glass plate, in such a way as to secure a uniform chemical action of the light on the paper, controlled or disturbed in no way, except by the shadowy image on the glass itself. The rays of light paint or delineate, by chemical action, the image on the paper, guided by the image on the glass. These rays paint it in just the same way in which they paint the negative on the glass, except that, in the latter case, they are reflected from the original, while in this they pass directly through the transparent plate. This is a new and beautiful art, discovered long after the statute in question was enacted. It is not a development of the art of making prints or engravings which existed at the date of the act. Then, a print was defined to be "a mark or form made by impression or printing; anything printed; that which, being impressed, leaves its form, as a butter print, a cut in wood or metal to be impressed on paper; the impression made; a picture; a stamp; the letters in a printed book," &c. As used in this statute, it was synonymous with the term "engraving," with which it is connected in the act, which means, in this relation, "an engraved plate; an impression from an engraved plate." This new art of photography, and all its kindred processes, is an entirely original and independent mode of taking pictures of material objects, and multiplying copies of such pictures at pleasure. That combination of creative or imitative power and mechanical skill by which the artist works out his own conception, or the embodied conception of another, in a fixed form, the fruits of which the law was intended to protect, is not brought into play. No block, plate, or stone is engraved. No figure is drawn, etched, raised, or worked on any surface from which copies are to be produced by impression or printed. The image thrown by light reflected from the original and passed through a camera produces a negative, and, when the light passes through the transparent negative on to paper held in contact with glass, it produces a positive. The image is no more formed by pressure when the positive is made on the paper held in contact with the glass plate, than when the negative is made on the glass by rays reflected from the original at a distance. In both cases, the only force that contributes to the formation of the image is the chemical force of light, operating on a surface made sensitive to its power. The springs in the pressure frame hold the paper firmly in contact with the glass, and thus prevent the diffusion of the light after it passes through the negative. This position of the paper and plate renders the operation of the light direct and strong, and brings out the lines of the picture clearly and sharply. The manufacture of these positives is called, in the language of this new art, "photographic printing." But names are not things. It is not printing in any sense known to the arts at the time this copyright act was passed; nor is it an extension of the old processes, or a new development of the art of printing or the art of engraving, as those arts were then understood. It is an entirely original and independent method of producing and multiplying pictures—an art, not of printing or engraving, but of securing the delineation of pictures by light operating on sensitive surfaces. In no just sense, therefore, can it be said to be within the act of 1831. Congress, proceeding upon this view, by the act of March 3, 1865 (13 Stat. 540), extended the protection of the copyright act to this new art of photography. This, however, was not done till after the copyrights in question were taken out, and this suit was brought. These plaintiffs, therefore, have no remedy in the present case. The verdict must, therefore, be set aside.